UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TYRONE JUDE WHITTINGTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1702** |
| **NEWELL NORMAND, ET AL.** | **SECTION: "J"(1)** |

**PARTIAL REPORT AND RECOMMENDATION**

Plaintiff, Tyrone Jude Whittington, a state inmate, filed the instant *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. He named the following defendants: Jefferson Parish Sheriff Newell Normand; Deputy Chief Sue Ellen Monfra; Lieutenant Aaron Wilkie; Major Ed Olsen; Deputy Bryan Bordelon; Deputy Dennis Robertson; Sergeant Timothy Berrian; Deputy Allen Flettrich; Deputy Gregory Donald; Sergeant Martha Ennis; Sergeant Brenda Lee; "Correcthealth"; "Correcthealth Psychiatric"; Jacqueline Saunders; Carl Preyer; Gary Cook; Steven Abadie; Simmie Carter; and the State of Louisiana.[1] In this lawsuit, plaintiff asserted various claims challenging the conditions of his confinement at the Jefferson Parish Correctional Center.[2]

On February 7, 2017, plaintiff's claims against Correcthealth Jefferson, LLC,[3] and the State of Louisiana were dismissed without prejudice.[4]

---

[1] Cook, Abadie, Carter, and the State of Louisiana were identified as defendants in plaintiff's original "Petition for Housing Transfer," which was construed as a deficient federal civil rights complaint. Rec. Docs. 1, p. 8, and 4-2, p. 8. When plaintiff filed subsequently filed a proper complaint, those defendants were no longer listed. However, out of an abundance of caution, the undersigned considered them to remain as defendants herein.
[2] After filing this lawsuit, plaintiff was transferred from that facility. He is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. See Rec. Doc. 41.
[3] Correcthealth Jefferson, LLC, is the correct name of the improperly identified "Correcthealth" and "Correcthealth Psychiatric" named as defendants in the complaint.
[4] Rec. Docs. 28 and 42; Whittington v. Normand, Civ. Action No. 16-1702, 2016 WL 8213259 (E.D. La. Sept. 14, 2016), adopted, 2017 WL 497802 (E.D. La. Feb. 7, 2017).

Currently pending before the Court are motions filed by Saunders and plaintiff. For the following reasons, it is recommended that both motions be granted.[5]

### Saunders' Motion

Jacqueline Saunders filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6] However, because that motion presented matters outside of the complaint for the Court's consideration, the parties were notified that the motion would be treated as one for summary judgment pursuant to Rule 56.[7] See Fed. R. Civ. P. 12(d). Plaintiff was afforded an opportunity to respond to that motion;[8] however, he has filed no response.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on

---

[5] This Partial Report and Recommendation does not address the claims against Sheriff Newell Normand, Deputy Chief Sue Ellen Monfra, Lieutenant Aaron Wilkie, Major Ed Olsen, Deputy Bryan Bordelon, Deputy Dennis Robertson, Sergeant Timothy Berrian, Deputy Allen Flettrich, Deputy Gregory Donald, Sergeant Martha Ennis, Sergeant Brenda Lee, or Carl Preyer. Those defendants have filed answers, and the claims against them should be allowed to proceed pending further development.
[6] Rec. Doc. 48.
[7] Rec. Doc. 49.
[8] Rec. Docs. 49 and 52.

file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In this lawsuit, plaintiff claims that Saunders "denied/refused to allow, or refer Whittington to Correcthealth Psychiatric."[9]  In her motion, Saunders argues that plaintiff's claim against her must be dismissed because her actions, as documented in plaintiff's medical records, did not rise to the level of deliberate indifference.[10]

Plaintiff's medical records reflect that he interacted with Saunders, a licensed clinical social worker, on three occasions while he was incarcerated in the Jefferson Parish Correctional Center.

The first occasion was on December 14, 2015.[11]  On that occasion, plaintiff complained that he "need[ed] to be on some medicine."  In pertinent part, Saunders recorded her objective findings from that visit as follows:

> I/M is a 30 y/o B/M.  Affect flat.  Reports dx hx of Bipolar – dx'd "a couple of years ago".  Reports hospitalized in MS last year (cannot recall hospital name) b/c

---

[9] Rec. Doc. 4, p. 6.
[10] Rec. Doc. 48-1, pp. 4-6.  It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).
[11] Rec. Doc. 19-3, pp. 17-18.

> "my people said I was trying to hurt myself". Denies any recent outpt tx. Reports rx hx of Latuda (states he was non-compliant c Depakote).

No orders resulted from that meeting, but plaintiff was instructed to follow up as needed and to participate in a twelve-step program.

The second occasion was on December 29, 2015.[12] On that occasion, plaintiff complained: "I told you I needed to be on my medicine." Saunders recorded her objective findings from that visit as follows:

> I/M is a 30 y/o B/M. I/M known to social worker and assessment completed at previous clinic. I/M demanding to be placed on medications. I/M has no recent outpt tx, no recent rx hx, and during his last incarceration I/M was not prescribed any medications. When social worker attempted to explain this, I/M became verbally aggressive and demanding. I/M stated "who the fuck are you to tell me what I need bitch". I/M could nopt [sic] comply with the parameters of the interview process and interview was terminated. I/M continued to curse at social worker as he was being escorted from clinic.

Again, no orders resulted from that meeting, but plaintiff was likewise instructed to follow up as needed and to participate in a twelve-step program.

After that second visit, plaintiff met with staff psychiatrist Dr. William Lo on January 28, 2016.[13] During that visit, plaintiff denied "racing thoughts and depressed mood." His "mood affect" was "appropriate," there was no evidence of a "thought disorder," he demonstrated no "abnormal movements," his concentration and memory were within normal limits, and he denied auditory hallucinations, a desire to hurt himself or others, visual hallucinations, suicidal ideation, homicidal ideation, or delusions. Although he concluded that plaintiff's progress showed no improvement, Dr. Lo issued no medication, referral, or other orders.

---

[12] Rec. Doc. 19-3, pp. 22-23.
[13] Rec. Doc. 19-3, pp. 34-35.

Plaintiff's third and final meeting with Saunders then occurred on March 3, 2016.[14] On that occasion, plaintiff complained: "I need my medicine." Saunders recorded her objective findings from that visit as follows:

> I/M is a 30 y/o B/M previously known to social worker. I/M reports that he is having trouble sleeping and states that he is having nightmares. I/M states "I see people that I saw get killed". I/M became frustrated demanding that he receive his medication and he's getting into fights because he isn't getting his medication. Educated I/M on appropriate sleep hygiene. I/M remained agitated and would not comply c parameters of interview process so interview was terminated.

Again, no orders resulted from that meeting, but plaintiff was instructed to follow up as needed.

Plaintiff was thereafter transferred from the Jefferson Parish Correctional Center on March 31, 2016,[15] having had no other interactions with Saunders.

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Here, Saunders does not appear to dispute that plaintiff's mental illness constituted a serious medical need.

---

[14] Rec. Doc. 19-3, pp. 46-47.
[15] Rec. Doc. 19-3, pp. 52-54.

Rather, Saunders simply argues that plaintiff cannot show that she acted with "deliberate indifference." Based on plaintiff's medical records, it is evident that Saunders is correct for the following reasons.

The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, plaintiff complains that Saunders failed to take any action to ensure that he received the medication he wanted. However, at the time of plaintiff's first visit with Saunders, she noted that he had not been receiving outpatient mental health treatment prior to his incarceration, and no need for medication was apparent. At the time of the second visit, Saunders still observed no objective need for medication, again noting that plaintiff had not been receiving outpatient mental health treatment prior to his incarceration. On that occasion, she further noted that he had no recent history of taking such medication and had not been prescribed such medication during his last period of incarceration. At the time of the third visit with Saunders, plaintiff had already been seen and evaluated by the staff psychiatrist, Dr. Lo, less than five weeks earlier. The psychiatrist

ordered no medication therapy for plaintiff, and he, not Saunders, obviously had the final say with regard to whether medication was medically appropriate.

Although plaintiff obviously disagreed with the determination that medication was not medically necessary, an inmate's disagreement with his medical treatment does not constitute deliberate indifference absent exceptional circumstances. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); see also Brauner v. Coody, 793 F.3d 493 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference). Moreover, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Therefore, such matters of professional medical judgment generally are better left to the expertise of medical personnel rather than to the legal expertise of judges. As a result, federal courts are reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

Simply put: Without more, plaintiff's allegations would, at worst, suggest only negligence or medical malpractice – and it is clear that allegations of negligence or malpractice are insufficient to state a federal constitutional claim. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7,

2004). Claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the medical records show that Saunders did not ignore plaintiff; she saw and evaluated him on three occasions. There is no evidence that she ignored his complaints or intentionally treated him incorrectly. Rather, she simply refused to accede to his demand for medication, and that refusal is not determinative. While there is no evidence that Saunders took any action to secure plaintiff a psychiatric consult during the first two visits, she obviously determined in her professional judgment that, based on her understanding of plaintiff's history, no intervention was necessary. Further, when plaintiff was in fact evaluated by the psychiatrist one month after that second visit, the psychiatrist concluded that medication was not medically necessary. Plaintiff has presented no evidence to rebut that conclusion, that he was harmed by Saunders' failure to refer him to a psychiatrist, or that she acted inappropriately in any way.

For these reasons, there is simply no basis for this Court to conclude that Saunders acted with deliberate indifference. As a result, plaintiff's constitutional claim against her necessarily fails, and her motion should be granted.

### Plaintiff's Motion

Plaintiff filed a document titled "Motion to Waive Said Defendants from Lawsuit."[16] In that motion, he indicates that he seeks to voluntarily dismiss his claims against Gary Cook, Steven Abadie, and Simmie Carter.

---

[16] Rec. Doc. 50.

Subject to exceptions not applicable in this case, the Federal Rules of Civil Procedure provide that "the plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment...." When a *pro se* plaintiff seeks dismissal in a situation in which Rule 41(a)(1)(A)(i) would be applicable, the fact that he fails to cite that rule or correctly style the notice of dismissal is of no significance.  See Carter v. United States, 547 F.2d 258, 259 n.2 (5th Cir. 1977).

The United States Fifth Circuit Court of Appeals has noted that Rule 41(a)(1)(A)(i) "means what it says" and, therefore, "a plaintiff has an *absolute right* to dismiss a lawsuit before the defendant has filed an answer or summary judgment motion." Id. at 259 (emphasis added).  When a plaintiff has filed a proper notice of dismissal, a court has "no power or discretion to deny [plaintiff's] right to dismiss or to attach any condition or burden on that right." Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir. 1976).

In this lawsuit, the defendants Cook, Abadie, and Carter have never even been served, much less filed answers or motions for summary judgment.  Therefore, pursuant to Rule 41(a)(1)(A)(i), plaintiff is entitled to voluntarily dismiss his claims against them.

## RECOMMENDATION

It is therefore **RECOMMENDED** that Jacqueline Saunders' motion, Rec. Doc. 48, be **GRANTED** and that the claims against her be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's "Motion to Waive Said Defendants from Lawsuit," Rec. Doc. 50, be **GRANTED** and that the claims against Gary Cook, Steven Abadie, and Simmie Carter be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this ninth day of August, 2017.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**